UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Donald SPLETZER,
Defendant-Appellant.

No. 75–3616.

United States Court of Appeals,
Fifth Circuit.

July 26, 1976.

Kenneth H. Jones, Jr., Ft. Worth, Tex. (court appointed), for defendant-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Robert Donald Spletzer was adjudged guilty, following a jury trial and adverse verdict, of escape from federal custody in violation of 18 U.S.C. § 751(a). The indictment charged that he knowingly, wilfully and unlawfully escaped. We reverse and remand.

## I. *Factual Background*

In 1972 Spletzer was convicted of the federal offense of theft from a federally insured bank and sentenced to eight years' imprisonment. After serving approximately two years he was scheduled to be released on parole on July 1, 1975. As a transitional step toward his return to society, he was transferred to the Salvation Army Work-Study Center (Center) in Fort Worth, Texas on April 7, 1975. The Center is an authorized pre-release facility of the federal government. Upon admission to it, all the inmates are required to sign an "Acknowledgement of Custody." Spletzer signed this document, which states, among other things, that the signor understood that leaving the Center without permission or failing to return within the prescribed time would be deemed an escape from the custody of the Attorney General.

Nevertheless, on April 18 and 19 Spletzer remained out all night without permission, but he was not punished or reprimanded for this offense. A similar transgression on May 1 and 2 likewise resulted in no adverse consequences for Spletzer. In both of these instances, however, he had telephoned the Center.

On the morning of May 13, Spletzer signed out of the Center to go to work. He failed to report back to it by his 10 p. m. curfew time, and when he failed to return or report in the next morning, the Center Director, Olin Tunnel, was ordered by a Bureau of Prisons official to place Spletzer on escape status. This direction apparently resulted in the indictment and conviction in this case, and the revocation of Spletzer's parole.

## II. *Trial Testimony*

Since the sufficiency of the evidence is a crucial issue in this case, we detail below the relevant trial testimony. At the trial Director Tunnel testified for the prosecution and a barmaid and Dr. Blaine

McLaughlin, a psychiatrist, were the two important defense witnesses.

The barmaid testified that on May 13 and 14 she worked at the Bank Vault Lounge, which is located approximately one block from the Center. Spletzer was an occasional customer of the Bank Vault; he arrived there with a party named Tony Salkeld, a former resident of the Center, at 9 or 10 p. m. on the 13th. Spletzer had been drinking "quite a bit" and was intoxicated by the time he and Tony left the lounge at between 10 and 11.

Later, the barmaid closed the lounge and encountered Spletzer outside. At her invitation he accompanied her to her residence, which was located approximately six miles from the Center. Spletzer was intoxicated, but twice on the way to her apartment, and again upon their arrival there, he asked her about a telephone to call the "halfway house."[1] Her apartment did not contain a telephone; she told him where one was located, but that he would have to wait until the next morning to use it. Before falling asleep at the barmaid's apartment, Spletzer repeatedly asked about a telephone. He never located one, however, so he did not phone the Center that night.

In the early morning hours of the 14th, Spletzer and his hostess engaged in intercourse, but when she left for work at between 8 and 9:30 a. m. she was unable to awaken him. At approximately 11 a. m. Spletzer again arrived at the Bank Vault. He had already been drinking and he consumed one or more beers there; he left about 15 minutes after entering.

Center Director Tunnel testified that he became concerned about Spletzer's whereabouts on the morning of the 14th. He undertook to locate him and convince him to return to the Center in order to avoid his being placed on escape status. At 11 a. m. on the 14th, however, he placed Spletzer on escape status pursuant to the direction of a prison official. At 2 p. m. Mr. Tunnel found Spletzer at Kenny's Bar, which is

1. The barmaid's uncontradicted testimony was that she did not know what Spletzer meant by the "halfway house" because she was unaware, at that time, of his status as an inmate at the Center.

located approximately three blocks from the Center. Spletzer was drinking at this time; he rebuffed the Director's attempts to persuade him to return, saying he would not go back and that "they" would never take him alive.

After an hour of such dialogue between Mr. Tunnel and Spletzer, the Director left him and called the F.B.I. to inform it of Spletzer's whereabouts. When he returned, Spletzer was still at the bar and he remained with him until the F.B.I. took him into custody without physical resistance. Near the end of Director Tunnel's direct testimony, the following colloquy occurred:

Q. [Prosecutor] During the time you had the conversation with [Spletzer] beginning at approximately at [sic] 2:00 in the afternoon of May 14th did he indicate he understood what you were saying?

A. Not—I don't think so. Only that I wanted him to come back, and he didn't want to come back. He was pretty intoxicated, in my opinion, at the time.

Q. All right, what happened when the F.B.I. agent got there?

A. He surrendered to their custody.

Q. Tell us what you remember seeing happen.

A. When they came in he—and spoke to him, . . . he stood up from the bar and they took him. . . . [H]e didn't —as far as I remember he didn't attempt to physically resist them taking him.

On cross-examination Mr. Tunnel testified that the escape provisos in the "Acknowledgment of Custody" that Spletzer signed were not rigidly enforced, and that inmates were not reported to prison officials until they had exceeded their curfew by ten or twelve hours. The Director further testified that Spletzer had never previously indicated a desire or intention to escape, and that if he had believed that Spletzer intended to escape on the 13th, he would not have waited until 11 a. m. on the 14th to report him. He further stated:

I don't think at 10:00 on the 13th he was intending to escape. I do think it is possible that he would have left, possibly left town or something on the afternoon

of the 14th, in the condition I found him. I think it certainly would have been a high risk to have ignored the condition.

Later, Mr. Tunnel reiterated that Spletzer "seemed to be pretty intoxicated."

The government stipulated that Spletzer was a chronic alcoholic. Dr. Blaine McLaughlin, a psychiatrist, testified as an expert witness for the defense concerning Spletzer's mental condition. Dr. McLaughlin testified that Spletzer suffered from permanent brain damage as a result of his alcoholism, that he did not have the capacity to control his drinking pattern when under the influence of alcohol, and that he suffered from periods of toxic psychosis during which he was unable to distinguish right from wrong or make responsible decisions. In response to a hypothetical question by defense counsel that was identical to the fact situation on which Spletzer's arrest and indictment were based, Dr. McLaughlin testified that Spletzer would be in a state of toxic psychosis and unable to make a rational decision during the time that he failed to return to the "halfway house."

III. *Elements of the Offense and Trial Proceedings*

There are three elements of the federal escape offense established by 18 U.S.C. § 751(a): (1) an escape, (2) from the custody of an institution where the prisoner is confined by direction of the Attorney General, (3) pursuant to a judgment of conviction or other process issued under the laws of the United States by a court. *United States v. Chapman*, 455 F.2d 746, 749 (5th Cir. 1972); *United States v. McCray*, 468 F.2d 446, 448 (10th Cir. 1972); *Hardwick v. United States*, 296 F.2d 24, 26 (9th Cir. 1961). In the case *sub judice* Spletzer filed a sworn admission prior to trial that conceded the second and third elements of the offense. Nevertheless, over defense objection on the grounds of irrelevance, incompetence and prejudice, the government was permitted to introduce into evidence a certified copy of Spletzer's prior conviction. This document revealed that the prior offense was "theft

**954**

from a Federally Insured Bank[,] Bank Robbery." [2]

■ Following the close of the government's case, Spletzer made a motion for a judgment of acquittal, which was denied. As previously noted, Spletzer was indicted for knowingly, wilfully and unlawfully escaping; the trial judge also instructed the jury, without objection, that specific intent was required to convict. Accordingly,[3] specific intent became a necessary element for conviction pursuant to the "law of the case" doctrine.[4] *United States v. Woodring,* 464 F.2d 1248, 1251 (10th Cir. 1972). *See generally United States v. Johnson,* 495 F.2d 242, 243–44 (10th Cir. 1974); *United States v. Locke,* 425 F.2d 313, 315 (5th Cir. 1970).

## IV. *Spletzer's Contentions*

On this appeal Spletzer contends that his conviction should be overturned because the evidence, especially with respect to specific intent, is insufficient to support it. In addition, Spletzer asserts that the trial court committed prejudicial error in admitting into evidence a full copy of the prior judgment, which revealed that his earlier conviction was for bank robbery. It is our conclusion that both of these points are meritorious.

## V. *Specific Intent*

Since the element of specific intent became the law of the case,[5] the government

was required to present sufficient evidence, viewing it most favorably to the government and making all reasonable inferences and credibility choices supportive of the verdict, to uphold a jury conclusion that, beyond a reasonable doubt, Spletzer possessed the requisite intent. *See United States v. Lange,* 528 F.2d 1280, 1287–88 (5th Cir. 1976). In this case the required specific intent consists of a voluntary departure or absence from custody with an intent to avoid confinement. *United States v. Nix, supra* (note 4) at 519. Under the facts disclosed by the record there were four potential periods of time during which Spletzer could have developed the necessary intent: (1) prior to May 13, (2) on the night of the 13th, (3) on the morning of the 14th, and (4) on the afternoon of the 14th.

■ The only evidence that could support the conclusion that at some time prior to the 13th Spletzer developed an intent to escape is the "Acknowledgment of Custody," which, the government implies, evidences the requisite intent no matter when it actually developed. While it is true that such a signed form can, in an appropriate case, evidence the necessary intent, *United States v. Locke, supra* at 315, certainly this inference is not conclusive. In the case *sub judice* this inference is not sufficient to support a jury finding of specific intent in light of the undisputed evidence of Spletzer's intoxication,[6] the laxity in enforce-

2. Contrary to the government's assertion at oral argument, the fact that Spletzer's prior conviction was for bank robbery was emphasized at the trial. In cross-examining Dr. McLaughlin concerning his testimony that Spletzer was incapable of making a rational decision to escape while suffering from toxic psychosis, the prosecution repeatedly asked the defense expert whether Spletzer would have known what he was doing if he perpetrated a bank robbery while in such a state. The damage that such cross-examination caused Spletzer's defense is self-evident.

3. This is conceded by the government.

4. Thus, we need not and do not resolve the difficult question of whether specific intent is always required under § 751. Other circuits have split on this issue. *Compare United States v. Nix,* 501 F.2d 516 (7th Cir. 1974) (specific intent required), *with United States v.*

*Woodring, infra* in text (specific intent not an element, but became the law of the case), *and United States v. Snow,* 157 U.S.App.D.C. 331, 484 F.2d 811 (1973) ("criminal intent" required).

5. *See* notes 3 and 4 *supra* and accompanying text.

6. The probative value of the acknowledgment is unquestionably high when the inmate's illicit absence occurs while he or she is in a rational state. Such a before-the-fact admission is of little probative value, however, when the absence occurs while the inmate is in a state of noncomprehension, unless there is evidence that an escape plan was previously formulated and that the inmate purposely became intoxicated to carry it out. In this case there is no such evidence. In fact, all the evidence supports just the opposite conclusion—that Splet-

ment of the Center's escape regulations, and the Director's testimony that Spletzer had never indicated any previous desire or intention to escape and did not have it on the night of the 13th.

With respect to the night of the 13th, not only did Director Tunnel testify that he doubted that Spletzer intended to escape at that time, but the barmaid's testimony that Spletzer was extremely intoxicated at that time was uncontradicted and unimpeached. Additionally, she testified that Spletzer repeatedly indicated his desire to telephone the Center that night—evidence clearly inconsistent with a design to escape, especially in light of Spletzer's earlier transgressions. Hence, the evidence is insufficient to support a reasonable jury determination that he developed the necessary intent to escape on the night of May 13.

■ Although there is no direct testimony that Spletzer was intoxicated on the morning of the 14th, the barmaid testified without contradiction that he had returned to the tavern and had been drinking that morning. The critical fact with regard to this testimony is that this return to the Bank Vault Lounge entailed a 6-mile journey by Spletzer *back to within one block of the Center.* This is the only admissible evidence concerning his actions on the morning of the 14th.[7] It simply is inconsistent with a reasonable jury conclusion that Spletzer formed the necessary intent at that time.

■ Thus, the question becomes whether the evidence concerning Spletzer's activities on the afternoon of May 14 can reasonably support the necessary jury determination. The only testimony relating to this time is that of Center Director Tun-

nel. However, Mr. Tunnel's uncontradicted testimony was that Spletzer was incoherently intoxicated and, in his opinion, did not intend to escape at that time. The jury was not bound to accept the testimony of Spletzer's expert that an alcoholic-psychotic such as Spletzer would not have been able to form the necessary intent even if he was not intoxicated at that time, *see, e. g., United States v. Ettorre,* 387 F.Supp. 582, 587 (E.D.Pa.1975). Nevertheless, Director Tunnel's testimony that Spletzer *was* severely intoxicated on the afternoon of the 14th was completely uncontradicted and is clearly inconsistent with a reasonable conclusion that Spletzer was capable of forming the requisite intent at that time. *United States v. Nix, supra* (note 4). Accordingly, there is insufficient evidence to support the necessary jury conclusion that Spletzer had the specific intent to escape at any relevant time and his motion for a judgment of acquittal should have been granted.

## VI. *Bank Robbery Evidence*

■ Moreover, it is also our conclusion that the certified copy of the prior judgment of conviction of bank robbery in its entirety was erroneously admitted (over objection). It is true that as a general rule a party may not preclude his adversary's proof by an admission or offer to stipulate. *United States v. Brickey,* 426 F.2d 680, 685–86 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); *Parr v. United States,* 255 F.2d 86, 88 (5th Cir.), *cert. denied,* 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958). Nonetheless, this principle, like all rules of evidence, is subject to the provision that where the probative value of relevant evidence is substantially outweighed by its potential for unfair prejudice, it

zer never previously planned to escape and never formulated such a design.

**7.** Director Tunnel testified concerning a telephone call from Tony Salkeld, the ex-inmate who accompanied Spletzer on the night of the 13th, which his secretary took while he was out "sometime after 11:00 [a. m.]" on the 14th. This testimony clearly was inadmissible hearsay, but it was not objected to and we treat it as competent evidence.

Nevertheless, the gist of Tony's phone call was that he was trying to "get [Spletzer] in." At best this evidence is ambiguous on the question of intent because it does not relate to the issue of intoxication, which is the critical factor in this case. Accordingly, this evidence cannot serve as a basis for a jury finding of specific intent.

should be excluded. Federal Rule of Evidence 403, 28 U.S.C. Rule 403 (1975). An important consideration relating to probative value is the prosecutorial need for such evidence. *See United States v. Adderly,* 529 F.2d 1178, 1180 (5th Cir. 1976); *United States v. Arteaga-Limones,* 529 F.2d 1183, 1197–98 (5th Cir. 1976).

In cases involving § 751(a) in which courts have held certified copies of the prior judgment of conviction admissible as a business record, the reason for allowing such evidence is that the record is necessary to establish the conviction and confinement elements of the offense. *United States v. Chapman,* 455 F.2d 746, 748–49 (5th Cir. 1972); *United States v. Jones,* 392 F.2d 567 (4th Cir.) *cert. denied,* 393 U.S. 882, 89 S.Ct. 186, 21 L.Ed.2d 156 (1968); *Johnson v. United States,* 313 F.2d 953 (8th Cir. 1963), *cert. denied,* 375 U.S. 987, 84 S.Ct. 521, 11 L.Ed.2d 474 (1964). In this case there was no prosecutorial need for the judgment of conviction in light of Spletzer's sworn admission of the conviction and confinement elements, *cf. Bayless v. United States,* 381

F.2d 67, 74 (9th Cir. 1967). The full record of the judgment of conviction was not relevant to the question of escape or Spletzer's intent to escape. *Cf. United States v. Locke,* 425 F.2d 313 (5th Cir. 1970); *Chandler v. United States,* 378 F.2d 906 (9th Cir. 1967). Moreover, it appears that the record of the conviction for a federal offense could have been established without proof that the crime involved was "bank robbery." Hence, whatever slight cumulative probative value can be ascribed to the judgment of conviction of bank robbery was substantially outweighed by its danger of creating prejudice.[8]

For the reasons stated Spletzer's motion for a judgment of acquittal should have been granted. REVERSED and REMANDED.

---

**8.** The government implies that this evidence was properly admitted because, for some unexplicated reason, Spletzer's sworn admission might have been insufficient or otherwise unsatisfactory to establish the conviction and confinement elements. However, if this was in fact the reason for introducing and admitting this evidence, this purpose could have been accomplished, without potential prejudice, by the simple and useful expedient of excising the language revealing the *nature* of the prior offense. Allowing into evidence proof of the *fact* of the prior offense by retaining the language in the judgment revealing a federal conviction is perfectly desirable and legitimate. Our difficulty arises from the circumstance that the *nature* of the prior offense, rather than merely the *fact* of the federal conviction, was unnecessarily admitted into evidence and utilized in a prejudicial manner. *Cf. Bayless v. United States, supra* in text. *See also* note 2 *supra.*