UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael John GRASSI, Jr.,
Defendant-Appellant.

No. 78–5494.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1979.

Rehearing and Rehearing En Banc
Denied Oct. 24, 1979.

**1194**

Andrew C. Hall, Miami, Fla., Allan J. Hall, Atlanta, Ga., for defendant-appellant.

Anthony J. LaSpada, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before WISDOM, CLARK and FAY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

An eleven-count indictment charged Michael John Grassi, Jr., and three other persons with violating various statutes forbidding the interstate transportation of obscene materials.[1] Grassi was tried separately from his co-defendants and was convicted on all counts. The salient features of the plan to distribute obscene materials and the government's investigation of it are detailed in a prior decision of this court involving the appeals of other participants in the scheme, *United States v. Sanders*, 592 F.2d 788, 790–91 (5th Cir. 1979). In this appeal, Grassi urges that the district court erred in permitting the jury to view the obscene films which were the subject of the indictment and in admitting various other pieces of evidence, that a statement made in the prosecutor's closing argument was an impermissible comment on Grassi's failure to testify, that the evidence was insufficient to convict him, and that the district judge's instructions to the jury were defective. Concluding that no reversible error occurred, we affirm.

The indictment against Grassi was based on the distribution of five obscene films. During the course of Grassi's trial, the government asked the court for permission to show these five films to the jury. Objecting to the admission of the films on grounds that their obscene contents would prejudice the jury against Grassi, the defense attorney offered to stipulate that the films were obscene. After the prosecutor had refused to accept the proposed stipulation, the district court partially overruled the defendant's objection and allowed the jury to view three of the films. These films, which require between ten and eleven minutes to show, portray homosexual acts of the most bizarre and repulsive nature. They are also largely repetitious.

Grassi urges that, under Rule 403 of the Federal Rules of Evidence,[2] the films should have been excluded since their probative value, in light of the proffered stipulation, was substantially outweighed by the prejudice arising from them. He argues, in the alternative, that the judge should have permitted the jury to view only a portion of one of the films. The government asserts that it had a right to refuse the stipulation and to show the films since they were necessary to prove the obscenity element of the crime with which Grassi was charged and to show that Grassi was aware of the contents of the films. Asserting that a decision concerning the obscenity of the films could not be made by viewing excerpts from them, the government also contends that the district court did not err in allowing the prosecution to present the three films in their entirety.

■ The process of evaluating the probity and prejudice inherent in a particular

---

1. Count one of the indictment charged Grassi with conspiracy to transport obscene materials in interstate commerce in violation of 18 U.S.C. § 371. Counts two, four, six, eight, and ten alleged that Grassi had violated 18 U.S.C. §§ 2 and 1465 by aiding and abetting others to transport obscene materials in interstate commerce. Counts three, five, seven, nine and eleven charged Grassi with aiding and abetting others to use a common carrier engaged in interstate commerce to transport obscene materials in violation of 18 U.S.C. §§ 2 and 1465.

2. Rule 403 provides:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

piece of evidence can be a complex one calling for a sifting of many disparate factors. Among the central considerations in determining probative value are, first, "how strong a tendency" the proffered evidence has to prove an issue of consequence in the litigation, 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5214 at 271 (1978); *see United States v. Beechum*, 582 F.2d 898, 914–915 (5th Cir. 1978) (en banc), and, second, the proponent's need for the evidence, *United States v. Spletzer*, 535 F.2d 950, 956 (5th Cir. 1976); Wright, *supra*, at 268–70. Since the films are admittedly the strongest available proof on the obscenity element of the crime, only the second probity consideration is at issue here.

 But for the defendant's offer to stipulate, our task in reviewing the district judge's determination under Rule 403 would be an easy one. The government was required to prove that all the films which were the subject of the indictment were obscene. A work is obscene if "the average person, applying contemporary community standards would find that the work as a whole appeals to the prurient interest," if "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law," and if "the work, taken as a whole, lacks serious literary, artistic, political or scientific value." *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). Under the *Miller* standard, a jury is required to view a film in its entirety in order to determine whether the film is obscene. *United States v. Levine*, 546 F.2d 658, 668 (5th Cir. 1977). Thus, in the absence of the stipulation, the probative value of the films here is as high as it could possibly be; any conclusion that the films were inadmissible

because of prejudice would mean that the obscenity element could not be proven and that the defendant could not be tried. Whatever prejudice would arise from admission of the films in this situation could not substantially outweigh the probative value of the films. *See* Wright, *supra*, § 5213 at 266.[3]

However, the defendant offered to stipulate that all of the films were obscene. Thus, the central issue in this case is how that offer to stipulate affects the probative value of the films. We examined the effect of an offer to stipulate on the Rule 403 balancing process in *United States v. Spletzer*, 535 F.2d 950, 956 (5th Cir. 1976). At his trial, Spletzer, who was charged with escaping from a federal prison, offered to admit the fact that at the time of his escape he had been confined in a federal prison pursuant to a judgment of conviction. Despite this tender, the district court permitted the government to introduce a certified copy of Spletzer's prior bank robbery conviction. This court held that the proposed stipulation eliminated the prosecutorial need for the copy of the judgment and that the district court abused its discretion in admitting the copy. The court also noted that the prejudice resulting from the introduction of the prior conviction could have been substantially reduced by deleting the language revealing the nature of the prior offense. *Id.* at 956, n.8.

Although *Spletzer* holds that an offer to stipulate should be among the factors considered in making a decision to admit or exclude the evidence under Rule 403, it does not indicate what result should be reached with regard to the films at issue here. The *Spletzer* court noted that the prosecution could, by introducing the expurgated con-

---

**3.** The government also urges that even if the three films should not have all been admitted on the obscenity issue, they were admissible to show Grassi's knowledge of the obscenity of the films and to show the extent of Grassi's participation in the scheme to distribute them. In order to prove a person has knowingly transported obscene materials, it need not be shown that the defendant was aware that the materials are legally obscene; the knowledge element is satisfied by proof that the defendant knew

"of the materials' sexual orientation." *United States v. Thevis*, 490 F.2d 76, 77 (5th Cir. 1974). Here, the government proved that the films were distributed in boxes, the outside covers of which contained a graphic description of the contents of the films, and that Grassi had viewed the boxes. In light of this evidence, the additional probative value, if any, of showing three of the films to prove knowledge and participation was slight.

viction, still have proven the elements of the crime even if it chose not to accept any part of the defendant's stipulation. Here, the prosecution must show all five films to the jury in order to meet its burden of proof on the obscenity issue. Thus, if the Rule 403 balancing process, taking into account the stipulation, requires the exclusion of any of the five films, then the prosecution must either accept a stipulation regarding the obscenity of the excluded films or face dismissal of that portion of the charges.

In *Parr v. United States*, 255 F.2d 86, 88, *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958), we held that, as a general rule, a party may not preclude his adversary's proof by an admission or offer to stipulate. *See United States v. Caldwell*, 117 U.S.App.D.C. 20, 46, 543 F.2d 1333, 1359, n.4 (1974); *United States v. Cockerham*, 155 U.S.App.D.C. 97, 476 F.2d 542 (1973); *United States v. Brickey*, 426 F.2d 680, 686 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); *United States v. Mishkin*, 317 F.2d 634, *cert. denied*, 375 U.S. 827, 84 S.Ct. 71, 11 L.Ed.2d 60 (1973); *Alire v. United States*, 313 F.2d 31, 34–35 (10th Cir. 1962), *cert. denied*, 373 U.S. 943, 83 S.Ct. 1554, 10 L.Ed.2d 699 (1963). At Parr's trial for the distribution of obscene films, some of the films were shown to the jury over Parr's objection and offer to stipulate that the films were obscene. Upon Parr's appeal, this court affirmed on the ground that it was permissible for the government to present proof on the obscenity issue notwithstanding the stipulation since obscenity was an essential element of the crime with which Parr was charged. *Parr supra*, at 88.

The government contends that *Parr* holds that the probative value of a piece of evidence necessary to prove an element of the crime can never be substantially outweighed by the unfair prejudice arising from it even if the defendant offers to stipulate to the matter. Acceptance of this argument would mean that Rule 403 could never be used to require the government to accept a defendant's stipulation regarding an element of the crime. We decline to adopt this reading of *Parr*, which was decided before Rule 403 was adopted. The government's contentions are inconsistent with the holding in *Spletzer* that an offer to stipulate should be given weight in the Rule 403 balancing process. In addition, both *Spletzer*, 535 F.2d at 955, and *Parr*, 255 F.2d at 98, recognized that the rule against requiring a party to accept an opponent's stipulation is a general rule and proceeded to examine whether the rule should have been applied in particular fact situations. This implies that the *Parr* rule is not a blanket prohibition against compelling the government to accept a defendant's stipulations. *See United States v. Brinklow*, 560 F.2d 1003, 1006 (10th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); Wright, *supra*, § 5194 at 198–199.

Moreover, acceptance of the government's arguments could cause ludicrous results in specific cases. In this case, for example, the shipment that was the subject of the indictment contained 871 separate reels of film. *Sanders, supra*, 592 F.2d at 790 n.2. If the government had chosen to indict Grassi on a separate count for each individual film, then the government would have been required to show each of the 871 films at the trial in order to establish their obscenity. Adopting the government's reading of *Parr* would allow the prosecution to exhibit this massive amount of highly inflammatory material even if the defendant offered to stipulate to its obscenity. This result would directly contravene the policies underlying Rule 403. Thus, we hold that *Parr* does not entirely preclude the requirement that an offer to stipulate must form a part of the Rule 403 weighing of probity and prejudice.[4]

---

**4.** The Advisory Committee's Notes on the Proposed Federal Rules of Evidence imply that the Rule 403 weighing process can, in some situations, result in requiring a party to accept his opponent's stipulations. The Note concerning Rule 401 states that evidence can be relevant even if offered on undisputed matters, but proceeds to conclude that *"[w]hile situations will*

■ It could also be argued that the offer of a stipulation, as a matter of law, totally eviscerates the probative value of a piece of evidence relevant to the matter stipulated and thus mandates exclusion of that evidence under Rule 403. The effect of adopting this opposite extreme in construing the Rule would be to require a party to accept any stipulation offered by his opponent and thus would allow a party to control the proof presented by his opponent at trial. We also reject this construction of Rule 403. A piece of evidence can have probative value even in the event of an offer to stipulate to the issue on which the evidence is offered. A cold stipulation can deprive a party "of the legitimate moral force of his evidence," 9 Wigmore on Evidence § 2591 at 589 (3rd ed. 1940), and can never fully substitute for tangible, physical evidence or the testimony of witnesses. In most cases, a party has the right "to present to the jury a picture of the events relied upon." *Parr, supra*, 255 F.2d at 88.

■ Rule 403 also requires a trial court to determine the amount of unfair prejudice resulting from the introduction of a piece of evidence. The phrase "unfair prejudice" does not refer alone to the fact that a particular piece of evidence will have adverse effects on a party's case. Most evidence offered by an opponent should have this effect. *Dollar v. Long Manufacturing, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). Rather, " 'unfair prejudice' within this context means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on Proposed Federal Rules of Evidence, 28 U.S.C.A. Rule 403 at 102; *see* Wright, *supra* § 5215. Thus, it is not enough for a party who asserts that Rule 403 requires an opponent to accept a stipulation merely to show that

the evidence that is the subject of the stipulation is detrimental to his case.

■ In formulating a rule for the application of Rule 403 in instances in which a stipulation is offered, we reject any per se approach. *See* Notes of Advisory Committee on Proposed Federal Rules of Evidence, 28 U.S.C.A. Rule 404 at 109. Rather, as is the case with other applications of Rule 403, determining the weight to be given an offer to stipulate in the balancing process is committed to the sound discretion of the trial court, tempered by the particular facts presented. *See United States v. Jackson*, 576 F.2d 46, 49 (5th Cir. 1978); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir. 1978). This discretion should be exercised to so balance probity against prejudice that the trial is fundamentally fair. In achieving this balance, the court has the power to require the government to accept a tendered stipulation in whole or in part as well as to permit it to reject the offer to stipulate in its entirety.

■ In this case the district court allowed the prosecution to show three of the films to the jury despite the defendant's offer to stipulate to the obscenity of all of the films. The less prejudicial alternative was to show fewer films and require the stipulation to be accepted as to the rest. However, in the context of this case, we cannot fault the trial judge for not requiring it. With the initial showing, the shock value was largely, if not entirely, spent. The films were repetitious to the point of boredom rather than revulsion. Given the probative value of these films which, even in light of the offer to stipulate, was substantial, we cannot hold that showing three films mandates a finding that the district court abused its discretion in allowing three films to be shown instead of two or one.

■ Grassi objects to various other evidentiary rulings made by the trial court, including the admission of testimony which

*arise which call for the exclusion of evidence offered to prove a point conceded by an opponent,* the ruling should be made on the basis of

such considerations as waste of time and undue prejudice (see Rule 403) . . . ." 28 U.S.C.A. Rule 401 at 85 (emphasis added).

referred to the existence of certain sexual paraphernalia in the warehouse where Grassi worked and the failure to exclude testimony which mentioned a local pornography "kingpin" and the hiring of girls to work in a "bath house." Again, the admission or exclusion of such testimony depends upon the result of the Rule 403 balancing process, which calls for an assessment of the probative value of the testimony in light of all the other evidence adduced at that trial. All of these rulings involve the sort of close calls which district judges must make in the course of trying law suits. Every tender involved matters which were relevant to some essential element of the government's case. None is so plainly wrong as to constitute the unfair prejudice which would make it an abuse of discretion.

 Grassi's challenge to the sufficiency of the evidence is meritless. He contends that the proof failed to show he was a knowing participant in the conspiracy charged. However, his role as a "roadman" or manager was well established. It was Grassi who called about this particular shipment when it fell into the wrong hands. The boxes containing each of the subject 871 films display a suggestive photograph and printed summary of the activity involved. In view of the explicit nature of these descriptions, Grassi would have had to be both illiterate and blind not to know he was trafficking in pornography. The repetitious nature of the three films viewed and the packing of all, would enable reasonable jurors to conclude that all five films were in fact obscene. Indeed, defendant continues to insist they were. Although the trial judge should have required the stipulation to be accepted as to the films not shown, the failure to do so in this case affects no substantial right of the defendant and is patently harmless error. Fed.R.Crim.P. 52(a).

 Grassi also alleges that the prosecutor's closing argument was improper because the prosecutor said,

I don't want you to think this is a trial to defeat any person's Fifth Amendment—not Fifth Amendment but any person's First Amendment.

This remark is asserted to constitute a comment on Grassi's failure to testify. Not so. Obviously, it was only a harmless slip-of-the-tongue by the prosecutor, which was immediately corrected and is harmless.

 In response to an argument by Grassi's counsel that his pay was low, the prosecutor attempted to assert that Grassi might have another source of income similar to that which the proof showed was made available to another employee by saying that Grassi got "cash money under the table." No proof supported any such payment to Grassi. The argument should not have been made in these terms. The prosecutor also argued Grassi was connected with hiring girls for "bath houses" and massage parlor operations. Grassi said this permitted the inference he had committed other crimes. These comments did find support in the evidence. This type of hard but not foul blow is not error.

 Grassi also challenges the district judge's instructions concerning the obscenity element of the crime, contending that the judge erred in failing to exclude children from the community standard portion of the instruction. We rejected this argument in *Sanders*. 592 F.2d at 795–796.

The conviction of Michael John Grassi, Jr., is

AFFIRMED.