Cateno TURCHIO, Plaintiff-Appellee,

v.

D/S A/S DEN NORSKE AFRICA et al.,
Defendants and Third Party Plain-
tiffs-Appellees-Cross-Appellants,

v.

PITTSTON STEVEDORING CORPO-
RATION, Third Party
Defendant-Appellant.

Nos. 152 and 40, Docket 73–1867
and 73–2058.

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 1974.

Decided Dec. 27, 1974.

See also, D.C., 336 F.Supp. 1187.

Thomas F. Molanphy, New York City (William P. Kain, Jr., Haight, Gardner, Poor & Havens, New York City, of counsel), for defendants and third party plaintiffs-appellees-cross-appellants.

Joseph Arthur Cohen, New York City (Sidney A. Schwartz, Alexander, Ash, Schwartz & Cohen, New York City, of counsel), for third party defendant-appellant.

Martin Lassoff, New York City (Morris Cizner, Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellee.

Before SMITH, HAYS and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Inconsistencies between a jury's verdict and its answers to interrogatories are not an infrequent occurrence. See, e. g., McCandless v. L. G. DeFelice & Son, 144 F.Supp. 462 (W.D.Pa.1956); Fuselier v. Thompson, 155 F.Supp. 75 (W.D.La.1957). In this typical tripartite longshoreman personal injury suit against a shipowner, which in turn impleaded plaintiff's employer-stevedoring concern, we are confronted with an unusual variation on the theme. In this case the jury not only answered interrogatories but rendered separate and successive verdicts that proved to be inconsistent. The district court, Robert L. Carter, Judge, entered judgment on the first verdict. We must decide whether either verdict may be upheld.

Plaintiff, a longshoreman, sued the shipowners in the Southern District of New York, alleging that while perform-

ing his duties aboard the S.S. Troubador he suffered personal injuries caused by unseaworthiness and negligence. The shipowners in turn impleaded plaintiff's employer, Pittston Stevedoring Corporation ("Pittston" herein), seeking recovery of indemnity for breach of its warranty of workmanlike service. At trial the shipowners' counsel, before summations and the court's charge to the jury, presented a series of written interrogatories to the court with the request that they be submitted to the jury for answer.[1] The court ruled that "The proposed special requests to the jury, those are in substance granted. They will be included in the charge." Toward the close of his charge with respect to the plaintiff's claim against the shipowners the judge instructed the jury as follows:

"I have now completed my charge to you on the plaintiff's action against the shipowner and in considering the action of the plaintiff against the shipowner, I want you to answer the questions whether or not you find one, whether the ship was unseaworthy; two, whether the unseaworthy condition, if you say yes, was the proximate cause of the injury.

"If your answer to those questions are yes, you need go no further but to award damages. If the answer is no, then you must decide whether or not the shipowner was guilty of negligence and number four whether that negligence was the proximate cause of the plaintiff's injury. Finally in that regard, whether or not the plaintiff himself contributed to his own injury." (App. 61a–62a).

Despite the court's failure to put the questions in writing or to request the jury to furnish written answers, there was no objection to the court's submission of the questions orally to the jury.

After deliberation the jury, without answering the questions, rendered a verdict for $75,000 in favor of the plaintiff and found in favor of the shipowners on their third party claim for indemnity against Pittston. Thereupon the following colloquy between counsel for the shipowners, the Court, Juror No. 1 and counsel for the plaintiff occurred:

"Mr. Baxter [counsel for stevedore]: Before the jury is dismissed, I have a request, your Honor.

"The Court: What is it?

"Mr. Baxter: That the jury be directed to reconsider the verdict and to answer the questions that the Court put to it before specifically, the Court in its charge put forward certain questions to be answered, and this verdict is not in accordance with the Court's charge and direction.

"The Court: I did ask several questions about seaworthiness and negligence and so forth. *I did want you to bring in a verdict on one, whether you found it was seaworthy or unseaworthy or whether you are basing your judgment on unseaworthiness or negligence or both.* What I would like to find out, did you discuss it from that angle at all?

1. Defendant's "Proposed Special Questions to Jury" read as follows:

"(1) Was the shipowner negligent?
 (yes) (no)

(2) Was the m/s Troubadour unseaworthy?
 (yes) (no)

(3) If your answer to (1) or (2) is in the affirmative was such negligence or unseaworthiness a proximate cause of plaintiff's accident?
 (yes) (no)

(4) If your answer to (3) is in the affirmative, what is the total amount of plaintiff's damages?
 ($ )

(5) Did any negligence on the part of plaintiff contribute to his accident?
 (yes) (no)

(6) If your answer to (5) is in the affirmative what percentage of plaintiff's damages are attributable to such negligence?
 ( %)

(7) Did the stevedore breach the warranty of workmanlike service which it owed to the shipowner?"
 (yes) (no)

\* \* \* \* \* \*

"Juror Number One: Would you be meaning in a different wordage and specific arrival of our verdict other than what we have put down on paper?

"The Court: Yes.

"Juror Number One: We couldn't deliberate here?

"The Court: No. *I did want an answer to questions, one, did you find unseaworthiness, was the proximate cause. If you did, did you go to damages or did you find negligence. That is how I wanted you to answer, so that I am going to ask you to return to see whether you can decide those issues, return to your deliberations.*

"Mr. Lassoff [counsel for plaintiff]: This is only with regard to the answers of questions one and two, whether there was negligence or unseaworthiness or both." (Emphasis supplied).

Fifteen minutes later the jury returned to announce, "We find one, a, the ship is seaworthy. 2A, negligence by the stevedoring company."

These answers, of course, were incomplete, since they failed to state whether the shipowner was negligent. After some colloquy between court, counsel and jury, the judge, without objection by any party, recharged the jury as to the elements of plaintiff's claim and the issues, listing six questions which the jury was requested to answer: (1) whether the ship was unseaworthy, (2) if so, whether the unseaworthiness proximately caused plaintiff's injury, (3) whether the shipowners were negligent, (4) if so, whether the negligence was the proximate cause of the injury, (5) whether plaintiff's negligence contributed to the injury, and (6) whether the stevedore breached its warranty to the shipowner.

After the jury had resumed further deliberations plaintiff's counsel, perhaps for the first time appreciating the risk that the jury's further consideration of the issues might jeopardize a verdict for the plaintiff or even result in a verdict in favor of the defendants, moved to enter judgment on the first verdict, claiming that only a general verdict had in fact been asked. The court deferred consideration of the matter, pending its receiving the jury's answers to the questions put to it.

On the following day the jury, after deliberating several hours, returned another verdict, this time finding (1) the ship *unseaworthy* and (2) in favor of Pittston. The jury also reduced plaintiff's damages from $75,000 to $50,000. It still failed to furnish specific answers to the six interrogatories put to it by the court. The court thereupon declared a mistrial which it promptly withdrew in order to consider motions by the plaintiff and the shipowners to the effect that judgment should be entered upon the original verdict for $75,000. In an opinion filed some weeks later the court held that the original verdict must stand and entered judgment accordingly, from which Pittston appeals.

## DISCUSSION

■ A trial judge is accorded wide discretion in determining whether to use special interrogatories in conjunction with a general verdict or to limit the jury to the latter. Zaiko v. District of Columbia, 138 U.S.App.D.C. 336, 427 F.2d 606, 609 (1970); Texas & P. Ry. v. Griffith, 265 F.2d 489, 493–494 (5th Cir. 1959); Employers Mut. Cas. Co. v. Johnson, 201 F.2d 153, 156 (5th Cir. 1953). The first question in the present case is whether the special interrogatory procedure was planned from the outset or was an afterthought. Despite Judge Carter's later conclusion that only a general verdict was called for, on this record we are satisfied that the court expected separate answers to the interrogatories put to the jury in its charge. Immediately prior to his charge the trial judge advised that he would grant the request for submission of interrogatories "in substance" by including the questions in his charge, which he then did, asking the jury to answer them. When the jury brought in a verdict without answering the specific questions the judge stated "I *did* want you to bring in a verdict on one, whether you found it was seawor-

thy or unseaworthy. . . ." Then he followed, in response to a question from the foreman, with the statement "I *did* want an answer to questions, one, did you find unseaworthiness, was the proximate cause. . . ." Specific interrogatories were again listed in supplemental instructions to the jury. While the issue might never have arisen if the court had furnished written questions to the jury before its original deliberations, the record as a whole makes it reasonably clear that answers to the court's oral interrogatories were expected.

Plaintiff and the shipowners argue that the trial judge's submission of oral interrogatories to the jury must be treated as a nullity because the court failed to follow the procedure specified by Rule 49(b), F.R.Civ.P., which provides in pertinent part:

"(b) *General Verdict Accompanied by Answer to Interrogatories.*

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict."

Had a timely objection been made by the parties, the argument might have merit. But the shipowners did not object and while plaintiff's counsel eventually objected (apparently when he sensed the danger of continuing with interrogatories), he did not do so until some of the oral interrogatories had been answered. Indeed, prior thereto he sought to assist the court in framing the questions to be submitted to the jury.

 Unquestionably the proper procedure in securing a verdict accompanied

by interrogatories is to put the latter in writing to the jury and request written answers. If that method had been adopted in the present case, much of the confusion which led to a procedural imbroglio would have been avoided. But the manner by which the questions are submitted to the jury remains merely a matter of form rather than of substance, which, like other procedural matters, may be waived by failure to make timely objection.[2] In the present case the court's failure to submit written interrogatories to the jury as specified by Rule 49(b) was waived by the parties' clear acquiescence in the court's submission of oral questions. The failure to provide written interrogatories presented no major obstacle to the jury's answering the court's questions. The questions, of course, were recorded by the court reporter, as were the jury's answers to two of the questions. Thus the jury did have access during its deliberations to a record of the questions, which it could have had reread to it by the court reporter upon request.[3] Nor was the jury, which prepared a written general verdict delivered by the foreman, precluded from responding by written answers.

 We conclude, therefore, that the jury was obligated to answer the special oral interrogatories put to it by the court, with the acquiescence of the parties, in conjunction with any general verdict that might be rendered. When the jury failed at first to answer any of the questions put to it, the court acted within its rights in asking the jury to deliberate a second and third time to obtain answers to the unanswered questions. See Porret v. City of New York, 252 N.Y. 208, 169 N.E. 280 (1929) (Cardo-

**2.** For example, a party may waive objections to the admissibility of evidence under Rule 43 by intentionally sitting silently by while the testimony is being received. See, e. g., Jenkins v. General Motors Corp., 446 F.2d 377 (5th Cir. 1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). Although Rule 49(a) directs the court, when submitting a special verdict, to require the jury to return "a special written finding upon each issue of fact," a party may waive jury determination of certain issues by failing to object to the court's interrogatories before the jury retires. Ribeiro v. United Fruit Co., 284 F.2d 317, 319

(2d Cir. 1960), cert. denied, 365 U.S. 872, 81 S.Ct. 905, 5 L.Ed.2d 861 (1961). See also Martin v. United Fruit Co., 272 F.2d 347, 348 (2d Cir. 1959); United States v. H. M. Branson Distrib. Co., 398 F.2d 929, 937 (6th Cir. 1968).

**3.** The court charged the jury:
"When you retire to the jury room, you may send for any exhibit which has been received in evidence and you may ask to have any testimony or any of the instructions which I have just given to you read back to you." (App. 68a).

zo, J.); Craigie v. Fireman's Ins. Co., 191 F.Supp. 710 (D.Minn.1961), affd., 298 F.2d 457 (8th Cir. 1962); 5A Moore's Fed.Practice ¶ 49.03 [4]. Cases holding improper a judge's inquiry into a juror's motivation or reasoning following return of a complete verdict, see, e. g., McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Grace Lines Inc. v. Motley, 439 F.2d 1028 (2d Cir. 1971), are inapplicable. We therefore have no basis to treat all that followed the original verdict as a nullity.

The trial judge may, in an appropriate case, withdraw special interrogatories and enter judgment on a general verdict, Diniero v. United States Lines, 288 F.2d 595 (2d Cir.), cert. denied, 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961), provided he acts before any verdict is returned or after a general verdict is received and no questions have been answered, see Kissell v. Westinghouse Elec. Corp., 367 F.2d 375 (1st Cir. 1966). But once the jury gives answers to interrogatories that are inconsistent with its verdict, judgment may not be entered upon the latter. See Rule 49(b); Welch v. Bauer, 186 F.2d 1002 (5th Cir. 1951). Here the jury, following return of its general verdict for $75,000, partially answered the court's questions and then rendered a second verdict which was inconsistent with its previous verdict and answers, without answering all of the interrogatories put to it or correcting its earlier answers to render them consistent with its second verdict. Clearly the inconsistency precluded the judge from accepting the first verdict. Moreover, once the parties had acquiesced in the resubmission of the interrogatories to the jury, they could no longer complain that the court had erroneously rejected the first verdict. Safeway Stores v. Dial, 311 F.2d 595, 599 (5th Cir. 1963).

Nor would we be justified in directing that judgment be entered on the jury's second verdict. The jury did not answer all of the interrogatories submitted to it by the court, which required response to such important questions as whether the accident was caused by the ship's unseaworthiness or the shipowners'

negligence and in part by contributory negligence. Furthermore, the trial judge, having revoked his declaration of a mistrial, apparently did not consider the second verdict to be salvageable and accordingly did not either require the jury to answer the questions or relieve it from the necessity of doing so on the ground that he proposed to enter judgment on the second verdict. By that stage in the proceedings it was readily apparent that the jury was more than a little confused. The reduction of the plaintiff's damage award from $75,000 to $50,000, and its reversal of its finding on unseaworthiness and the indemnity claim are difficult to rationalize. Under the circumstances, a new trial is the appropriate course, cf. Phillips Chem. Co. v. Hulbert, 301 F.2d 747 (5th Cir. 1962), even though the parties seek judgment on different verdicts, Royal Netherlands Steamship Co. v. Strachan Shipping Co., 362 F.2d 691 (5th Cir. 1966), cert. denied, 385 U.S. 1004, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967).

The judgment of the district court is reversed and the case is remanded for a new trial.