**John J. DELL'ORFANO, Plaintiff–Appellant,**

v.

**Salvatore ROMANO; Captain Wilcenski; Sgt. Bennett; Investigator Sanacrose, Defendants–Appellees.**

**No. 432, Docket 91–2276.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 6, 1991.

Decided April 23, 1992.

John J. Dell'Orfano, pro se.

Jeltje DeJong, Asst. Suffolk County Atty., Hauppauge, N.Y. (E. Thomas Boyle, Suffolk County Atty., of counsel), for defendants-appellees.

Before: CARDAMONE, PIERCE, and MINER, Circuit Judges.

PIERCE, Circuit Judge:

John J. Dell'Orfano, a state prisoner, appeals *pro se* from a judgment, entered on May 8, 1991, in the United States District Court for the Eastern District of New York, Wexler, *Judge*, after a non-jury trial, in favor of defendants, state prison officials. For the reasons set forth below, we vacate the judgment of the district court and remand for a jury trial.

## BACKGROUND

On June 14, 1987, Dell'Orfano was received in the Suffolk County Correctional Facility ("SCCF") in Riverhead, New York, as a pre-trial detainee, where he was to be held pending trial in state court on robbery charges.[1] He was initially placed in the general prison population. On June 15, 1987, he was removed from the general prison population and placed in administrative segregation.

Approximately fourteen months later, in a letter dated August 11, 1988, Dell'Orfano, appearing *pro se*, initiated what he termed a "Show Cause" action in the Supreme Court of the State of New York, Suffolk County ("New York Supreme Court"), and requested that the SCCF be directed to show cause why he should not be returned to the general prison population. Treating his letter as a petition for a writ of habeas corpus, the New York Supreme Court, on August 17, 1988, stated, in a brief order: "[T]he application by petitioner to be released from administrative segregation into the general jail population is denied as the Warden has due cause for such administrative segregation."

On September 19, 1988, Dell'Orfano, appearing *pro se*, brought this action in the United States District Court for the Eastern District of New York. He sued pursuant to 42 U.S.C. § 1983, seeking damages from the defendants—the warden of the SCCF and various Suffolk County prison officials. In his complaint, as later amended, Dell'Orfano claimed that while detained at the SCCF, he was confined in administrative segregation without written notice or a hearing; he did admit, however, that, in response to his inquiries, Sergeant Ronald Bennett, one of the defendants, orally informed him that his placement in administrative segregation was "due to a prior escape nine years ago." Dell'Orfano, *inter alia*, also alleged: that he was confined to his cell for twenty-three hours a day; that the lights were lit for twenty-four hours a day; that he was afforded inadequate time to exercise because the time he spent showering, making phone calls, seeing visitors, appearing in court, and cleaning his cell was subtracted from his one-hour exercise

---

1. According to Dell'Orfano's testimony at his federal trial, he was subsequently convicted of one count of robbery in the second degree, and was sentenced to twenty years to life imprisonment. It is unclear from the record as to when Dell'Orfano was convicted and sentenced.

period; that his activities, including his use of the toilet, were observed twenty-four hours a day by both male and female officers; that he was denied access to the courts by deprivation of law library access, or assistance of law library clerks; and that the exercise facilities, ventilation, and living conditions were inadequate. Dell'Orfano's amended complaint stated that he remained in administrative segregation at the SCCF until April 4, 1989, when he was transferred to another correctional facility. Although it is unclear from his amended complaint just what relief he was seeking in this § 1983 action, in his original complaint, Dell'Orfano sought damages in the amount of $300,000.

A trial of appellant's § 1983 suit was held in the district court on May 6, 1991. At the outset, Dell'Orfano inquired as to whether the court received his "letter of April 12." This letter, which is not mentioned on the docket sheet, and which is not part of the record on appeal, purportedly contained a list of Dell'Orfano's witnesses. While the record is not totally clear as to the witness issue, the district court informed Dell'Orfano that it would start the trial and then determine whether or not he could call a witness.

Dell'Orfano asked the district judge: "[W]ill we work in this trial by you or a jury?" The judge responded that there would be a non-jury trial because "[n]o jury demand was made." Dell'Orfano answered that "the defendants, there is no prejudice on [them] because they demanded a jury pool from Suffolk County." The defendants stated: "[W]e've withdrawn our demand for a jury pool from Nassau–Suffolk. Never intended." The case then proceeded as a bench trial.

Thereafter, the district court heard testimony from Dell'Orfano. During his testimony on re-direct, the district court asked him if he had "any other witnesses." Dell'Orfano mentioned the names of three individuals who were apparently incarcerated, Matthew Solomon, Earl Hannon, and Chris Nelson. However, he indicated: "I don't know where they were." Following Dell'Orfano's testimony, Sergeant Bennett,

a defendant, testified on behalf of the defendants.

At the conclusion of Sergeant Bennett's testimony, the court again asked Dell'Orfano if he had "any more witnesses." Dell'Orfano mentioned two names, Earl Hannon and Chris Nelson, but again indicated: "I don't know where they are, the witnesses." The district court then inquired as to whether Dell'Orfano was finished presenting his case; Dell'Orfano asked if this included his "personal witnesses," and the district court indicated it did. However, before any further response from Dell'Orfano, the district judge stated: "I'm not going to call them down. I will tell you right now."

The district judge proceeded to deliver his ruling. With regard to Dell'Orfano's claim that he was placed in administrative segregation without written notice or a hearing, the district judge stated that, based on the New York Supreme Court decision and the testimony at trial, Dell'Orfano had failed to establish a violation of his constitutional rights. With respect to Dell'Orfano's claims regarding the conditions of his confinement, the district court stated that either the claims did not rise to the level of constitutional magnitude, or that Dell'Orfano had not proven his case. Thereafter, judgment was entered in favor of the defendants and Dell'Orfano's complaint was dismissed.

On appeal, Dell'Orfano argues that the district court erred in not granting his request for a jury trial and in not permitting him to call witnesses, and alleges that the district court improperly dismissed his action under the doctrines of res judicata or collateral estoppel. Dell'Orfano also maintains that the district court erred in rejecting his claim that he was placed in administrative segregation without written notice or a hearing.

### DISCUSSION

Dell'Orfano claims that the district court improperly denied him a jury trial. Based on the following series of events, we agree and remand for a jury trial.

The defendants, in their answer filed June 7, 1989, demanded a "jury ... pooled from Nassau and Suffolk Counties." Soon thereafter, on June 9, 1989, the district court referred Dell'Orfano's case to a United States Magistrate Judge. On July 7, 1989, the magistrate judge, noting that the parties had not responded to an order to inform the magistrate judge of the extent of pre-trial proceedings, returned the case to the district court for a "nonjury trial." In an order filed October 25, 1989, the district court granted Dell'Orfano's motion to re-open discovery and returned the case to the magistrate judge. Dell'Orfano received several extensions of time to complete discovery. The orders granting these extensions indicated that the case would be returned to the district court "for trial." However, in an order dated August 27, 1990, the magistrate judge concluded that the case would be returned for a "non-jury trial." In a letter, entered October 18, 1990, Dell'Orfano requested a jury trial. He claimed that although he had not requested a jury trial in his original complaint, the complaint form provided to him had not indicated that such notice was required. In addition, he noted that the defendants, in their answer, had demanded a jury. In an order filed November 5, 1990, the magistrate judge, noting "the unique facts of this case," granted Dell'Orfano's motion for a jury trial. However, on January 22, 1991, the magistrate judge, without apparent explanation, returned the case to the district court for a "non-jury trial."

At the start of the trial, on May 6, 1991, Dell'Orfano specifically asked the district judge if he was to receive a jury trial. When he was informed that there would be a non-jury trial, Dell'Orfano stated that the defendants had "demanded a jury pool." The defendants responded, "we've withdrawn our demand for a jury pool.... Never intended." The judge proceeded to try the case without a jury. On appeal, Dell'Orfano challenges the district court's denial of his request for a jury trial.

In pertinent part, Fed.R.Civ.P. 38(b) states:

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

A plaintiff is entitled to rely on a defendant's jury demand to preserve his own right to a jury trial, and because the right to a jury trial is "fundamental," "waiver is not lightly to be inferred." *Gargiulo v. Delsole*, 769 F.2d 77, 79 (2d Cir.1985). Under Fed.R.Civ.P. 38(d), "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." In addition, pursuant to Fed. R.Civ.P. 39(a), when a jury trial has been demanded as provided in Rule 38, the trial shall be by jury, unless "the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury."

■ Based on our review of the record, there is no indication that Dell'Orfano consented to the defendants' withdrawal of their jury demand, or entered into a stipulation to consent to a bench trial. Moreover, Dell'Orfano's participation in the non-jury trial, without more, is insufficient to waive his right to raise this issue on appeal. *See Gargiulo*, 769 F.2d at 79. Therefore, we vacate the district court's ruling and remand for a jury trial.

Dell'Orfano alleges that the district court improperly precluded him from calling witnesses; he also claims that it erroneously barred his claims under the doctrines of res judicata or collateral estoppel, based on the New York Supreme Court's ruling in his state habeas corpus proceeding. We are unable to conclude from the record, with certainty, just what rulings the district court made regarding the witness issue; and the district judge clearly stated that he did not rely on the state court ruling alone in connection with appellant's administrative segregation claim. In light thereof, and in view of our remand for a jury trial, we need not and do not address these issues.

Read liberally, Dell'Orfano's *pro se* brief challenges the district court's ruling concerning his claim that he was placed in administrative segregation without written notice or a hearing. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam). With regard to this claim, the district court stated:

> I will tell you quite honestly, you have a problem. Your problem is that you had a judge, a Supreme Court Judge [sic], listen to your claim of administrative segregation, and even though I'm not finding res judicata, but I have to give it some evidence, and he found against you on the main cause of your action, he ruled against you, and you say he didn't listen, didn't understand, didn't cover the other things. But on the main thing he did rule and he said, "Ordered, the application by petitioner to be released from administrative segregation into the general jail population is denied as the [W]arden has due cause for such administrative segregation." That's your main case, that they segregated you without a hearing, without notice, without cause, without anything.
>
> . . . .
>
> In respect to the administrative segregation, based upon [the New York Supreme Court] decision, based upon the testimony, you failed to prove a violation of constitutional rights.

In articulating his decision with regard to Dell'Orfano's administrative segregation claim, it appears that the district judge focused on whether the defendants had cause to confine Dell'Orfano in administrative segregation. However, the district court's analysis was incomplete because Dell'Orfano essentially complained that the defendants violated his right to federal due process by confining him to administrative segregation without written notice or a hearing. In light of Dell'Orfano's claim that he was denied due process, the more appropriate analysis would have been to examine whether Dell'Orfano's placement in administrative segregation deprived him of a protected liberty interest, and, if so, what process was due him. *See Matiyn v.*

*Henderson*, 841 F.2d 31, 33–34 (2d Cir.), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988).

We note that, generally, confinement imposed for administrative reasons does not implicate a liberty interest. *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir.1990). "However, where the state by statute or regulation prescribes mandatory procedures that govern administrative segregation, it thereby creates a liberty interest in remaining in the general prison population." *Covino v. Vermont Dep't of Corrections*, 933 F.2d 128, 129 (2d Cir.1991) (per curiam). Herein, the district court failed to examine whether New York State prescribed such mandatory procedures by statute or regulation, thereby creating a protected liberty interest. *See id.* Therefore, on remand, we direct the district court to determine whether a New York State statute or regulation prescribed mandatory procedures vis-á-vis Dell'Orfano's confinement in administrative segregation, thereby creating a protected liberty interest, and, if so, whether Dell'Orfano was deprived of this liberty interest without due process. *See id.* at 130.

We note that, on remand, in addition to his due process claim, Dell'Orfano may, where appropriate, present his claims related to the conditions of his confinement in administrative segregation. For example, in his amended complaint, Dell'Orfano alleges he was "denied access to the court[s] by either a total deprivation of law library access, or through assistance of law library clerks." *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). We express no opinion as to the merits of Dell'Orfano's various claims.

## CONCLUSION

Based on the foregoing, the judgment of the district court is vacated and the case remanded for a jury trial consistent with this opinion.