Karen E. WILLIAMS, Plaintiff–Appellant,

v.

KETV TELEVISION, INC., Defendant–Appellee.

No. 92–3178.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided June 15, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 10, 1994.*

* Chief Judge Arnold and Judges McMillian, Beam and Hansen would grant the petition.

Carole McMahon–Boies, Lincoln, NE, argued, for appellant.

Allen Daubman, Omaha, NE, argued, for appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Circuit Judge.

In this action, Karen E. Williams, an African–American part-time production assistant for KETV Television, Inc., claims that KETV violated 42 U.S.C. § 1981 and Title VII when it filled two full-time positions with whites in 1986 and 1988. The district court[1] submitted the § 1981 refusal-to-hire claims to a jury. The jury initially returned a verdict

for KETV on the 1986 claim and a verdict for Williams on the 1988 claim. After the court rejected the verdict in favor of Williams as internally inconsistent, the jury returned a new verdict on that claim in favor of KETV. The court then ruled against Williams on her Title VII claims. Williams appeals, alleging numerous trial errors. We affirm.

## I. Background.

Williams began work for KETV in 1979 and was promoted to part-time production assistant in 1981. In 1986, she applied for a full-time position. When the job went to a white KETV employee who had less seniority, Williams filed a race discrimination complaint with the E.E.O.C. In 1988, another full-time production position opened up. Williams applied but was not considered. That position ultimately was filled by an outside white applicant. After receiving a right-to-sue letter from the E.E.O.C., Williams commenced this action, alleging that she was denied the 1986 and 1988 positions on account of her race and sex, and further alleging that KETV engaged in race-based retaliation, including refusing to consider her for the 1988 position, on account of her E.E.O.C. complaint.

At trial, Williams introduced evidence that she was qualified for the 1986 position and had more seniority than the white female who got the job; that her co-workers regularly discriminated against blacks;[2] that KETV managers cut back her hours, stopped giving her favorable assignments, and filled her personnel file with negative comments after her complaint to the E.E.O.C.; and that she was not even considered for the full-time position in 1988 despite seven years of competent performance as a part-time production assistant.

KETV's evidence tended to show that Williams was denied the 1986 position because the white female applicant was better qualified; that her co-workers were not ra-

---

1. The HONORABLE WILLIAM G. CAMBRIDGE, United States District Judge for the District of Nebraska.

2. There was evidence that personnel involved in the hiring decisions at issue referred to Williams

as a "black bitch," told racial jokes to co-workers, yelled only at Williams and another black female employee, and rebuffed a co-worker who complained that Williams was being treated unfairly.

cially biased; that the ultimate decision-makers had given the 1986 decision extra consideration to make sure it was not racially motivated;[3] that more comments were placed in her personnel file beginning in 1987 because Williams requested more formal evaluations, not because she had filed an E.E.O.C. complaint; and that she was not considered for the 1988 position because the station concluded that, if possible, it would hire someone from the outside with greater expertise in graphics. We conclude from our review of the trial record that this conflicting evidence was sufficient to support jury verdicts in favor of either party on the § 1981 refusal-to-hire claims.

After three days of deliberation, the jury returned verdicts finding no race discrimination when KETV failed to hire Williams for the 1986 position, but finding in Williams's favor on her claim that race was a determining factor when KETV denied her the 1988 position. The problem arose with the damages portion of the jury's verdict on the 1988 claim. First, the jury awarded Williams no actual damages (lost wages and benefits), despite the fact that the court included in its instructions the parties' stipulation that Williams would have earned $39,700 more in salary and $5,800 more in benefits as a full-time production assistant. However, the jury then awarded Williams $10,000 compensatory damages, $35,000 punitive damages, and $1 nominal damages.

The district court concluded that the verdict on the 1988 claim was internally inconsistent, primarily because the jury found in Williams's favor but awarded her no actual damages. After discussing this question with counsel for both parties, the district court resubmitted the 1988 claim to the jury with a new verdict form and reread the portions of its instructions pertaining to that claim. The jury returned shortly thereafter with a verdict in KETV's favor on the 1988 claim. The court subsequently found in favor of KETV on Williams's Title VII claims.

Williams raises a number of issues on appeal. We turn first to her claim that the district court erred in rejecting the jury's initial verdict on her 1988 claim. Although this is not the issue Williams emphasized in her brief, we find it the most troubling aspect of this appeal, and its resolution greatly affects our disposition of the other issues.

## II. Rejection of the Verdict.

█ Williams argues that the jury's initial verdict regarding her 1988 claim can be construed so as to be internally consistent and the district court therefore erred in resubmitting that claim to the jury. Because courts must reconcile seemingly inconsistent verdicts, "by exegesis if necessary," to preserve the Seventh Amendment right to jury trial, see *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963), this would be a difficult issue had Williams objected to the district court's resubmission. However, we conclude that this issue was not properly preserved for appeal.

When it received the initial verdict, the district court sent the jury back to the jury room and discussed the verdict at length with counsel. At the outset of that discussion, the court opined that the verdict on the 1988 claim was internally inconsistent, primarily because the jury found in favor of Williams but awarded no actual damages even though the parties had stipulated to substantial lost wages and benefits. The court proposed to resubmit the 1988 claim with a new verdict form and to reread its instructions relating to that claim.

Counsel for Williams's initial response reveals that she accepted the court's opinion that the verdict was internally inconsistent:

> Your Honor ... my concern is that the jury will not understand where the inconsistency lies, and I think we need to put particular emphasis on the fact that if you find in favor of the Plaintiff, which they already have, you must award the back

---

**3.** When told of the production manager's choice to fill the 1986 position, KETV's personnel manager was concerned that the promotion of an employee less senior than Williams might appear racially motivated. Therefore, she directed the production manager to obtain further input from producer-directors for whom the production assistants worked. When a number of directors supported Williams's rival, the personnel manager approved the production manager's decision.

pay and benefits. And if all we do is read the instructions and tell them "you did something wrong, folks," maybe they'll think that the Court is directing them that the Defendant should have won. . . .

Counsel urged the court to resubmit the 1988 claim with a supplemental instruction on damages: "I want the jury to understand that what they did wrong is their assessment of damages," she explained. "What they need to be told is that 'you can't find for the Plaintiff and not give her back pay.' That's all they need to be told."

■ Counsel for KETV likewise agreed that the 1988 claim should be resubmitted but objected to a supplemental damage instruction "because you're, in effect, directing them what to do." After lengthy discussion, the court ruled that it would simply advise the jury that its initial verdict on the 1988 claim was inconsistent, reread its prior instructions regarding that claim, and resubmit the claim with a new verdict form. Neither party objected when the district court embarked upon that course of action. In most circumstances, a party that has "made no specific, relevant objection to the District Court's decision to submit [an] issue to the jury . . . has therefore waived appellate review of [that] ruling." *Porterco, Inc. v. Igloo Products, Inc.*, 955 F.2d 1164, 1173 (8th Cir. 1992).

■ If the district court was correct that the initial verdict was internally inconsistent, then the court had discretion to resubmit the 1988 claim to the jury. *See* the last sentence of Fed.R.Civ.P. 49(b). It is well established, at least in this circuit, that a party waives any objection to an inconsistent verdict if she fails to object to the inconsistency before the jury is discharged. *See Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992); *Lockard v. Missouri Pac. R.R.*, 894 F.2d 299, 304 (8th Cir.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990), and cases cited. Here, we have the converse situation—Williams failed to object

to the district court's decision that the verdict *was* inconsistent. We agree with the only circuits to consider the issue that Williams has waived her objection to the district court's decision to reject that verdict. As the Second Circuit stated, "once the parties had acquiesced in the resubmission of the interrogatories to the jury, they could no longer complain that the court had erroneously rejected the first verdict." *Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 106 (2d Cir.1974). *Accord Perricone v. Kansas City S. Ry. Co.*, 704 F.2d 1376, 1380 (5th Cir.1983); *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1156 (5th Cir.1981); *Safeway Stores, Inc. v. Dial*, 311 F.2d 595, 599 (5th Cir.1963).

To put this issue in practical terms, both parties embraced the district court's decision to reject what appeared to be a compromise verdict. Both opted for a win or a loss, not a tie. Fairness requires that the ultimate loser be held to that choice.

■ Williams also argues that we should reinstate the initial verdict and add on the stipulated actual damages. This issue was arguably preserved when counsel for Williams asked the district court to take this action before it decided to resubmit the 1988 claim. However, because the initial verdict was ambiguous, the district court did not abuse its discretion in rejecting a proposal that it unilaterally modify the verdict to resolve that ambiguity.[4]

### III.  Retaliation Issues.

■ Williams argues that the district court erred in refusing to instruct the jury separately on her § 1981 retaliation claim. Williams proposed an instruction that KETV was liable for retaliation if the jury found that KETV employees had "treat[ed] the plaintiff in a negative manner" as a result of her E.E.O.C. complaint. The district court properly rejected that instruction because liability under § 1981 "extends only to the

---

4. Williams also argues that the district court erred in resubmitting the verdict without explaining the nature of the inconsistency. While it may seem preferable as a matter of hindsight if the court had explained the perceived inconsistency, the trial judge who has presided at trial and

instructed the jury is in the best position to make such decisions. We conclude that the district court neither coerced the jury nor otherwise abused its discretion by rereading its prior instructions. *See Karl v. Burlington No. R.R.*, 880 F.2d 68, 72–73 (8th Cir.1989).

formation of a contract, but not to problems that may arise later from the conditions of continuing employment." *Patterson v. Mc-Lean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2367, 105 L.Ed.2d 132 (1989). Williams argues that the district court should have submitted her entire retaliation claim to the jury under the 1991 amendments to the Civil Rights Act. However, the relevant amendment does not apply to cases arising prior to the enactment of the Civil Rights Act. *See Rivers v. Roadway Express, Inc.,* — U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

Williams also argued at the instructions conference that her retaliation claim is actionable under *Patterson* because she alleges that KETV failed to hire her for the 1988 position on account of her E.E.O.C. complaint. The district court agreed with this contention but concluded that this aspect of the retaliation claim was adequately encompassed within its instructions regarding the 1988 refusal-to-hire claim. Williams did not object to those instructions. Since she misstated the law in her proposed instruction, and did not object to the instruction as given, this issue was not preserved for appeal. *See* Fed.R.Civ.P. 51; *Jones v. Thompson,* 974 F.2d 86, 88 (8th Cir.1992).

Consistent with the court's ruling that retaliation was a legitimate part of the 1988 claim, counsel for Williams repeatedly emphasized that theory during her closing argument to the jury. Thus, the instructions given on the retaliation claim were not plain error. *See Farmland Indus. v. Frazier-Parrott Commod., Inc.,* 871 F.2d 1402, 1408 (8th Cir.1989).

### IV. The Title VII Claims.

After the jury returned its verdicts on the § 1981 claims, the district court entered findings of fact and conclusions of law dismissing Williams's Title VII claims. Williams argues generally that the district court erred in entering judgment in KETV's favor on her Title VII claims. However, we may not consider this issue generally. The district court properly recognized that, in deciding the Title VII claims, it was bound by the findings contained in the jury's § 1981

verdicts. *See Catlett v. Missouri Highway & Transp. Comm'n,* 828 F.2d 1260, 1263 (8th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988). The court also recognized that Williams's Title VII sex discrimination claim, and part of her Title VII retaliation claim, had not been submitted to the jury. It considered those claims *de novo.* We review these two aspects of the district court's Title VII ruling under different standards.

Williams argues that the district court erred in rejecting her Title VII refusal-to-hire claims "when the evidence established [her] right to a judgment on all counts." Because the district court was estopped to resolve the Title VII claims inconsistently with the jury's § 1981 verdicts, this argument is, in substance, a challenge to the sufficiency of the evidence to support the jury verdicts. As we previously stated, we conclude that there was sufficient evidence to support jury verdicts in favor of either party in this case. Therefore, the portion of the court's Title VII ruling that was based upon the jury's verdicts—rejecting the claims of race discrimination and retaliation regarding the 1986 and 1988 refusals-to-hire—must be affirmed. *See, e.g., Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1378 (8th Cir. 1992).

The district court also decided Williams's sex discrimination and remaining retaliatory claims on the merits. On appeal, Williams does not challenge the dismissal of her sex discrimination claim, but she vigorously argues that the evidence "overwhelmingly supports" her Title VII retaliation claim. The district court found that Williams "did not prove by the greater weight of the evidence that adverse employment action occurred as a result" of her E.E.O.C. complaint. *Sherpell v. Humnoke School Dist.,* 874 F.2d 536, 540 (8th Cir.1989). After carefully reviewing the record, we cannot say that this finding is clearly erroneous.

Although Williams introduced evidence that KETV retaliated by cutting back her hours, making derogatory remarks, taking her off more coveted assignments, and placing negative comments in her personnel file,

the record does not reflect that she identified this conduct as actionable "adverse employment action." She did not request Title VII equitable relief against this conduct, nor did she plead or argue this as a "discriminatory work environment" claim such as the Title VII claim at issue in *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1394–95 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). Williams's objective at trial was monetary relief for KETV's refusal to promote her in 1986 and 1988; those were the adverse employment actions against which her retaliation evidence was directed. The district court decided the Title VII claims that Williams chose to present in a manner consistent with the jury verdicts, and we must affirm.

1. The jury's verdict arose in the following context. The jury was instructed to complete the damages portion of the verdict form only if it found KETV's decision not to hire Williams for the 1988 job was race based. The verdict form permitted the assessment of "actual damages" (liquidated damages), compensatory damages and punitive damages. Nominal damages were to be awarded if Williams's damages did "not have monetary value." Jury Inst. 16. Actual damages were defined to "include wages or fringe benefits you find the plaintiff would have earned in her employment with the defendant if she had been hired as a full-time production assistant in October, 1988, *minus the amount of earnings and benefits from other employment received by the plaintiff during that time.*" Jury Inst. 15 (emphasis added). Jury Instruction 8 set forth the stipulated difference in salary between Williams's part-time position and the full-time position at issue. No instruction specified that the stipulated wage differential was to be considered Williams's "actual damages." Indeed, the jury was specifically instructed that it should weigh the evidence to determine the actual damages Williams sustained. Jury Inst. 15. As indicated, the jury awarded no "actual" or liquidated damages, $10,000 compensatory damages, $1.00 nominal damages, and $35,000 punitive damages.

2. First, the record established that Williams consistently worked weekends after 1988. The jury could have believed that these weekend hours created a wash between Williams's part-time earnings and the salary she would have earned as a full-time production assistant. Thus, they awarded no actual damages. The jury also awarded Williams $10,000 "compensatory" damages, which are defined as the "sum [which] will reasonably compensate her for the harm to her reputation, personal humiliation and mental anguish, if any, which she has experienced as a

The judgment of the district court is affirmed.

BEAM, Circuit Judge, dissenting.

Contrary to the court's contention, *supra* at 1442, there is really nothing difficult about the reconciliation issue in this case.[1] The verdict can be reconciled in at least two ways.[2] Because courts must reconcile seemingly internally inconsistent verdicts, "by exegesis if necessary," the district court's resubmission of a reconcilable verdict was error. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Lockard v. Missouri Pac. R.R.*, 894 F.2d 299,

result of [KETV] not hiring her...." Jury Inst. 16, ¶ 1. In other words, damages for harm which is nonmonetary in nature. Then, reading the nominal damages instruction to award $1.00 for "damages [without] monetary value" to mean damages *nonmonetary in nature*, the jury acted consistently with its compensatory but no actual damages determination in awarding her $1.00. Finally, in response to KETV's "extraordinary," "evil," and "callously indifferent" misconduct, the jury awarded Williams $35,000 punitive damages. *See* Jury Inst. 16.

A second internally consistent explanation of the jury's verdict is that they found KETV's section 1981 violation to be its race-based failure even to consider her application in retaliation for her prior discrimination claim. Section 1981, as interpreted by *Patterson v. McLean Credit Union*, 491 U.S. 164, 182, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989), requires that black citizens be extended the same right to make contracts as white citizens. That right surely encompasses the right to have one's application or bid at least considered in the first instance and then, perhaps, rejected on the merits. The denial of the right even to compete is a real injury in itself, even if one cannot show that one would have won the competition. *See id.* at 186–88, 109 S.Ct. at 2377–79 (plaintiff need not show she was the best-qualified candidate to establish that the reasons defendant advanced for its failure to contract were pretextual); *see also Northeastern Fla. Chapter of Assoc. Gen. Contractors v. Jacksonville*, —— U.S. ——, ——, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993) (denial of the right to compete itself constitutes an injury in fact). Williams presented evidence fairly inferring that KETV's decision not to consider her application was race based. If the jury so found, it would logically award no actual or liquidated damages, and the rest of the verdict would be explained in the same manner as above.

304–05 (8th Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990). A court's duty to reconcile a verdict is well established, and failure to do so deprives Williams of the jury verdict to which she is entitled by the Seventh Amendment. Leaving this error uncorrected deprives Williams of substantial rights and works a miscarriage of justice. Thus, if necessary, I would hold that the district court committed plain error that should be addressed regardless of any purported waiver. *United States v. Ojeda,* 23 F.3d 1473, 1476–77 (8th Cir.1994); *United States v. Martin,* 933 F.2d 609, 611 (8th Cir.1991).

The court's reliance on Williams's purported waiver is not only hypertechnical and wrong, it works a great injustice. Offering ample evidence of egregious misconduct by employees of KETV, Williams won her verdict fair and square. The following scenario has robbed her of it.

After receiving the verdict, the district judge excused himself from the jury's presence, and telephoned the parties' attorneys. The judge informed the attorneys that the jury had delivered its verdicts. Because of the perceived need to resubmit the case to the jury, the judge properly insisted on the confidentiality of the discussion. The record clearly indicates that by the time of the phone call, the judge had already made a decision to resubmit the issue of damages to the jury, and was simply asking the attorneys for ideas on how the resubmission should be handled. Faced with an abrupt and unexpected fait accompli, Williams's attorney properly focused her comments on the manner of resubmission. She did, however, tell the judge that he need not resubmit the verdict to resolve the perceived problem with the damages. She also offered the judge an explanation about how the jury may have reached their damages award through a misunderstanding of the damages instructions. Williams's attorney also vigorously argued that any resubmission should be on the issue of damages only, in order to avoid giving the jury the impression that the judge disagreed with their finding of liability. Finally, she clearly advised the district judge of the impropriety of resubmitting the entire verdict without a specific explanation as to the problem. Thus, the district court was well apprised that Williams believed resubmission was unnecessary, that there was a way to reconcile the verdict without resubmission, and that Williams feared that resubmission without a specific explanation would result in the jury being coerced into finding no liability. Therefore, reaching the issue of the consistency of the verdict in this appeal results in no "ambush" of the district court. *See United States v. 1966 Beechcraft Aircraft Model King Air A90,* 777 F.2d 947, 951 (4th Cir.1985). The district judge's resubmission, combined with this court's action in *sua sponte* raising and deciding the waiver issue, deprives Williams of her fairly won verdict.

Our circuit has yet to consider whether mere inadvertence may result in the waiver of a party's right to a verdict in her favor. This circumstance evidently arises only rarely, as most courts assiduously attempt reconciliation before resubmitting a verdict. The court's analysis is inadequate to support the waiver rule it adopts. As the court notes, many of the cases on which it relies involve the situation where a party has failed to object to entry of an arguably inconsistent verdict for an opponent before the discharge and dispersal of the jury. The situation before us involves entirely different dynamics and therefore different policy considerations. In the discharge situation, concerns of judicial economy militate against excusing any waiver. Chances are, juries have not only dispersed, but have also discussed the evidence and their deliberations with others after discharge. A whole new trial would likely be required if the waiver rule was not enforced against those who failed to object to the court's acceptance of a truly inconsistent verdict. Further, courts have no duty to recognize and reject *sua sponte* internally inconsistent verdicts. Likewise, parties have no independent Seventh Amendment right that only consistent verdicts be entered against them, and are deprived of nothing if they fail to object to such a verdict in a timely fashion.

In the situation where a consistent verdict is erroneously resubmitted, the dynamics are different. Judicial economy does not weigh

in favor of declaring a waiver, as there are no implications for judicial economy in the act of reinstating the verdict. No jury needs to be recalled, the parties are not subjected to any extra expense or inconvenience. And, courts do have an independent duty to recognize and enter internally consistent verdicts, and to reconcile those that may initially seem internally inconsistent. Thus, resubmission of a consistent verdict amounts to an abuse of discretion by the resubmitting court. Finally, and most importantly, there is an important and inviolate constitutional right which is being destroyed.

In determining whether to apply a waiver rule to the resubmission of a favorable internally consistent jury verdict, the policies elaborated in the Federal Rules should guide us. As the Federal Rules state: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties *inviolate.*" Fed. R.Civ.P. 38(a) (emphasis added). While this right may be waived unless asserted in a timely fashion, once asserted it may not be waived without a "written stipulation filed with the court or by an oral stipulation made *in open court*[3] and entered in the record." Fed.R.Civ.P. 39(a). This prophylactic rule is intended to prevent the inadvertent waiver of a "fundamental" right by careless statements or conduct. *E.g., Dell'Orfano v. Romano,* 962 F.2d 199, 202 (2nd Cir.1992); *White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.), *cert. denied,* 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990); *Hanlon v. Providence College,* 615 F.2d 535, 537–39 (1st Cir.1980). Waiver is therefore not to be lightly inferred when the procedures outlined in the Federal Rules have not been followed. *Id.* The resubmission of a consistent verdict is analogous to a judge unilaterally declaring that a plaintiff has withdrawn a demand for a jury trial. In both cases, the judge inserts himself into the factfinding process after the demand for a jury trial has been made. Therefore, such a resubmission should be viewed through a similar analytical framework. Williams demanded her Seventh Amendment right to a jury trial, and even won a favorable verdict. Thus, waiver should not be lightly inferred.

There are cases in which waiver of a jury trial has been inferred despite failure to follow the procedures in Rule 39(a). However, those cases involve situations where parties have completely litigated their cause in a bench trial without mentioning their demand for a jury trial. *See, Dell'Orfano,* 962 F.2d at 202; *White,* 903 F.2d at 703. A waiver is inferred in these situations because there is no danger that the party conducted an entire trial inadvertently, and because it would be unfair to burden the opposing side with a second trial and the concomitant preparation necessary therefor. *Id.; Hanlon,* 615 F.2d at 538–39.

Unlike the bench trial situation, when a consistent verdict is resubmitted, there has generally been no continuous and sustained course of conduct from which the court can confidently infer that any waiver was not inadvertent. There are no concerns of judicial economy involved as all that is required to fix the mistake is to enter judgment on the initial verdict. A refusal to imply a waiver imposes no burden, unfair or otherwise, on the other party. Therefore, and especially since such "waiver is not lightly to be inferred," there is no reason to hold that resubmission without objection suffices to deprive a party of a verdict in her favor. *Gargiulo v. Delsole,* 769 F.2d 77, 79 (2d Cir. 1985). I believe that all the concerns underlying Rule 39(a) point to a finding that the resubmission here, which was essentially a deprivation of the asserted Seventh Amendment right of the prevailing party, was plain error.

There are only four cases which give any support to the court's waiver proposition. Of those four cases, three are from the same circuit. The oldest case announces the waiver rule without considering the Seventh Amendment issue, in fact, without any analysis whatsoever. *Safeway Stores, Inc. v. Dial,* 311 F.2d 595, 599 (5th Cir.1963). The second case, *Turchio,* on which the court relies primarily, involved resubmission of a jury verdict that the Second Circuit found to be truly inconsistent, and therefore provides no insight for our case. *Turchio v. D/S A/S Den Norske Africa,* 509 F.2d 101, 106 (2d Cir. 1974) (a new trial was ordered due to the

---

3. Here, waiver took place, if at all, in closed and   confidential proceedings conducted by telephone.

jury's apparent confusion, *Safeway* mentioned in dicta). The third case, *Ballou,* involves an inconsistency between answers to special interrogatories and the general verdict. *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1156 (5th Cir.1981) (new trial ordered on other grounds). The *Ballou* court declined to consider whether resubmission was appropriate because there was an obvious inconsistency in the verdict and the prevailing party failed to object. There is, however, no analysis other than a citation to *Safeway.* The last case, *Perricone v. Kansas City S. Ry.,* 704 F.2d 1376, 1380 (5th Cir.1983), analogizes the resubmission of a consistent verdict to the waiver of a jury trial by failure to make a timely *demand* for such a trial. This is a very poor analogy indeed, considering the care required by the Federal Rules of Civil Procedure for the withdrawal of such a demand once it is made. A party with a jury verdict in hand has certainly exercised her fundamental Seventh Amendment right to a jury trial, and thus the more stringent waiver concerns evinced by Rule 39(a) should come into play. Frankly, the cases cited by the court simply miss the boat, and should not be considered a basis for deciding this unique issue in this circuit.

Finally, the court does not adequately address the issue, clearly preserved and argued by Williams, of the propriety of the method by which the district court resubmitted the verdict. When resubmitting a verdict, a court must be very careful not to impose its will on the jury and thus deprive a party of her right to a jury trial. *Nance v. Gulf Oil Corp.,* 817 F.2d 1176, 1179 (5th Cir.1987); *Perricone,* 704 F.2d at 1378; *see Karl v. Burlington Northern R.R.,* 880 F.2d 68, 73 (8th Cir.1989). Here, the district court failed to carefully explain to the jury the nature of the perceived problem with the verdict. Rather, it simply told the jury that its verdict on the first claim, for KETV, was acceptable, but that its verdict on the second claim, for Williams, was "obvious[ly]" inconsistent with the court's instructions. Transcript at 670. The court then reread the jury the instruc-

tions on both liability and damages, reading the damages portion louder. The court expressly intended that the louder reading of the damages instructions would alert the jury that the problem was within their damages assessment rather than with their liability assessment. Transcript at 664–65. Of course, the jury had already been specifically instructed to disregard any inflections in the judge's voice as guidance for their deliberations. Jury Inst. 1. That the same jury which had awarded Williams substantial punitive damages for KETV's egregious misconduct only minutes earlier, returned shortly after resubmission with a verdict for KETV demonstrates the inherent coercion and impropriety of this resubmission. Thus, even had this verdict been internally inconsistent, the manner of resubmission was an abuse of discretion.[4] This abuse of discretion denied Williams her jury verdict and, derivatively, her Seventh Amendment right to trial by jury. At the very least, then, the case should be reversed and remanded for a new trial on the § 1981 claim.

I respectfully dissent.

---

4. The court avoids substantive discussion of this issue by saying that it may have been "preferable as a matter of hindsight" for the district court to have "explained the perceived inconsistency." Court's footnote 3, *supra.* The court seems to miss the point that Williams's counsel strenuously and correctly objected to the reinstruction approach taken by the district court and made an accurate forecast of the miscarriage of justice that would result.